<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GORSUCH, LTD., B.C., a Colorado
corporation; GORSUCH, LIMITED AT
ASPEN, a Colorado corporation;
GORSUCH, LIMITED AT KEYSTONE
MOUNTAIN, a Colorado corporation;
GORSUCH COOPER, LLC, a Colorado
limited liability company,

      Plaintiffs - Appellants,

and

GORSUCH, LTD., a Colorado
corporation,

      Plaintiff,

v.

WELLS FARGO NATIONAL BANK
ASSOCIATION,

      Defendant - Appellee.

No. 14-1013

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:11-CV-00970-PAB-MEH)**

---

Richard B. Podoll, Podoll & Podoll, P.C., Greenwood Village, Colorado (Robert A.
Kitsmiller, Podoll & Podoll, P.C., Greenwood Village, Colorado, and Matthew C.

Ferguson, The Matthew C. Ferguson Law Firm, Aspen, Colorado, with him on the briefs), appearing for Plaintiffs-Appellants.

Brian J. Berardini (David C. Walker, with him on the brief), Brown, Berardini & Dunning, P.C., Denver, Colorado, appearing for Defendant-Appellee.

Before **KELLY**, **LUCERO**, and **MATHESON**, Circuit Judges.

**MATHESON**, Circuit Judge.

In 2008, Wells Fargo extended a $14 million line of credit to Gorsuch, Ltd., a ski equipment, apparel, and home furnishing company. In 2009, when Gorsuch, Ltd.'s winter sales were lower than expected, Wells Fargo suspended the line of credit. Gorsuch, Ltd. and the Gorsuch Entities—Gorsuch, Ltd., B.C.; Gorsuch, Limited at Aspen; Gorsuch, Limited at Keystone Mountain; and Gorsuch Cooper, LLC—sued Wells Fargo for damages.[1]

The Gorsuch Entities contend they were intended third-party beneficiaries of the Credit Agreement and were not subject to a clause precluding third-party beneficiaries from bringing suit. The district court disagreed and dismissed them from the litigation. After Gorsuch, Ltd. and Wells Fargo proceeded to arbitration, Gorsuch Cooper and

---

[1] For the purposes of this litigation, "Gorsuch Entities" refers to Gorsuch, Ltd., B.C.; Gorsuch, Limited at Aspen; Gorsuch, Limited at Keystone Mountain; and Gorsuch Cooper. "Gorsuch Businesses" refers to the Gorsuch Entities and Gorsuch, Ltd.

Gorsuch, Limited at Aspen ("Gorsuch Cooper and Aspen") sought to amend the complaint to add additional tort claims. The district court determined (1) Gorsuch Cooper and Aspen were no longer parties, and (2) they had not shown good cause to amend after the deadline established in the scheduling order. It denied the motion. On appeal, the Gorsuch Entities challenge the order dismissing them from the case. Gorsuch Cooper and Aspen appeal the denial of their motion to amend the complaint.[2]

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court.

## I.  BACKGROUND

### A.  *Factual History*

Renie and David Gorsuch founded Gorsuch, Ltd. in 1962. They subsequently formed Gorsuch, Ltd., B.C.; Gorsuch, Limited at Aspen; and Gorsuch, Limited at Keystone Mountain to operate additional retail stores, and formed Gorsuch Cooper to own the property from which Gorsuch, Limited at Aspen conducts its operations. The Gorsuches and their three sons own all of the Gorsuch Businesses.

The Gorsuch Businesses are separate legal entities, but their finances and operations are intermingled. Wells Fargo and its predecessors, United Bank of Denver

---

[2] Gorsuch, Ltd. was a party to the litigation in the district court but arbitrated its claims against Wells Fargo under an arbitration clause in the Credit Agreement. It is not a party to this appeal.

and Norwest Bank, provided credit to Gorsuch, Ltd. for over 40 years. Wells Fargo was aware Gorsuch, Ltd. allocated capital to the Gorsuch Entities, and considered the aggregate operations of the Gorsuch Businesses when it calculated loans and security throughout the lending relationship.

On October 31, 2008, Gorsuch, Ltd. and Wells Fargo entered into a Credit Agreement through which Wells Fargo extended a $14 million line of credit to "finance Borrower's working capital requirements." App. at 63. Section 7.6—the No Third Party Beneficiaries provision ("NTPB") at issue in this litigation—precluded any recognition of third-party beneficiaries or their claims. The NTPB provision specified the Credit Agreement

> is made and entered into for the sole protection and benefit of the parties hereto and their respective permitted successors and assigns, and no other person or entity shall be a third party beneficiary of, or have any direct or indirect cause of action or claim in connection with, this Agreement or any other of the Loan Documents to which it is not a party.

*Id.* at 76. Gorsuch, Ltd. and Wells Fargo signed the Credit Agreement, and the Gorsuch Entities signed as guarantors.

On January 6, 2009, Gorsuch, Ltd. notified Wells Fargo that the economic recession and poor snowfall had significantly weakened peak season sales. Wells Fargo suspended access to the line of credit on January 23, 2009. On August 31, 2009, Wells Fargo accelerated the line of credit and past loans, and declared all payments immediately due with interest.

## B. *Procedural History*

On March 23, 2011, the Gorsuch Businesses commenced litigation in Colorado state court, which Wells Fargo removed to federal court.[3] Gorsuch, Ltd. alleged breach of contract, breach of the covenant of good faith and fair dealing, and fraudulent inducement. The Gorsuch Entities asserted third-party beneficiary claims. Wells Fargo moved to dismiss the Gorsuch Entities' third-party beneficiary claims under Rule 12(b)(6) and to compel arbitration of Gorsuch, Ltd.'s claims. In the scheduling order, the magistrate judge set a deadline of July 12, 2011 for any amendments to the pleadings.

On November 17, 2011, the district court determined Gorsuch Cooper was not a permitted assignee of Gorsuch, Ltd., and was therefore subject to the Credit Agreement's NTPB provision. It also held the NTPB provision precluded the Gorsuch Entities from seeking relief as third-party beneficiaries. The court granted Wells Fargo's motion to dismiss the third-party beneficiary claims, dismissed the Gorsuch Entities as plaintiffs, stayed the action while Gorsuch, Ltd. and Wells Fargo proceeded to arbitration, and administratively closed the case. The court noted that if the parties did not act to reopen

---

[3] The Gorsuch Businesses are Colorado corporations. For the purposes of diversity jurisdiction, Wells Fargo is a citizen of South Dakota, where its main office is located. *See* 28 U.S.C. § 1348; *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006).

the case by December 1, 2012, the case would be dismissed without prejudice.  Gorsuch, Ltd. and Wells Fargo then commenced arbitration.[4]

On December 16, 2011, Gorsuch, Ltd. moved for leave to file a second amended complaint.[5]  The district court held the motion in abeyance, noting that no party had filed a motion to reopen the case, meaning it remained administratively closed.  Gorsuch, Ltd. moved to reopen the case on December 21, 2011, but withdrew the motion on April 6, 2012 as it arbitrated its claims.  On April 26, 2012, the district court denied the motion for leave to file a second amended complaint without prejudice to refiling if the case was reopened.

The parties took no further action before the December 1, 2012 deadline; accordingly, the district court dismissed the case without prejudice on December 3, 2012.  On the same day, Gorsuch, Ltd. moved to reconsider the dismissal, which the district court granted on March 14, 2013.  On April 1, 2013, Gorsuch, Ltd. then moved to reopen

---

[4] The Gorsuch Entities attempted to assert their claims in arbitration as well, but the arbitration panel, citing the district court's order dismissing them as third-party beneficiaries, concluded it lacked jurisdiction over their claims.  On November 26, 2012, the panel issued an interim award of $1,916,431 to Gorsuch, Ltd.  It later confirmed a final award of $2,186,752.80, and then ordered Wells Fargo to pay an additional $10,550 for the arbitrators' compensation.

[5] Although the Gorsuch Businesses remained on the caption and purported to file motions collectively, the only plaintiff remaining after the district court's order on November 17, 2011 was Gorsuch, Ltd.

the case, which the district court granted on May 8, 2013.  Finally, on July 10, 2013,

Gorsuch, Ltd. moved for the court to confirm the arbitration award and also moved along

with Gorsuch Cooper and Aspen to file a third amended complaint.[6]  The court confirmed

the arbitration award, which concluded Gorsuch, Ltd.'s involvement in the case.  This left

Gorsuch Cooper and Aspen seeking in the third amended complaint to bring two new

claims against Wells Fargo for intentional interference with contract and intentional

interference with prospective business advantage.

On August 21, 2013, a magistrate judge issued a minute order clarifying the

district court had dismissed all plaintiffs except Gorsuch, Ltd. on November 17, 2011.

The magistrate judge recommended the district court deny the motion for leave to file a

third amended complaint.  On December 13, 2013, the district court agreed with the

magistrate judge that Gorsuch Cooper and Aspen (1) had been dismissed from the

litigation and (2) had not shown good cause for failing to assert the new tort claims until

after the deadline to amend pleadings.  The district court therefore denied their motion to

---

[6] Because the district court denied Gorsuch, Ltd.'s motion to file a second
amended complaint on April 26, 2012, the "third" amended complaint was technically the
second.  To minimize confusion, however, we will follow the district court and the
parties and refer to the complaint as the "third amended complaint."  Gorsuch, Ltd.
resolved its claims in arbitration, and only Gorsuch Cooper and Aspen presented claims
in the third amended complaint.

amend the complaint. On December 17, 2013, the district court issued a final judgment. The Gorsuch Entities filed a timely appeal.

## II.  DISCUSSION

This appeal contends the district court erred in (1) dismissing the Gorsuch Entities based on the NTPB provision, and (2) denying Gorsuch Cooper and Aspen's motion for leave to amend their complaint. To address these issues, we apply Colorado law.[7] We conclude the district court (1) correctly dismissed the Gorsuch Entities, and (2) properly denied Gorsuch Cooper and Aspen's motion to amend based on their failure to show good cause under Federal Rule of Civil Procedure 16.

### A. *Third-Party Beneficiary Claims*

We review a Rule 12(b)(6) motion to dismiss de novo. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). We ask whether the factual allegations in the

---

[7] In cases arising under 28 U.S.C. § 1332(a)(1), we apply state law to the substantive issues of the appeal, and determine which state's law applies by using the forum state's choice-of-law rule. *Peck v. Horrocks Engineers, Inc.*, 106 F.3d 949, 952 (10th Cir. 1997). In contract and tort, "Colorado follows the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws." *ITT Specialty Risk Servs. v. Avis Rent A Car Sys., Inc.*, 985 P.2d 43, 47 (Colo. App. 1998). Colorado has the most significant relationship to the transactions at issue in this appeal. The parties agree Colorado law should apply, and the terms of the Credit Agreement specify that it will be governed by Colorado law.

complaint, if accepted as true, allege a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-57 (2007).

On appeal, the Gorsuch Entities present two arguments as to why they were improperly dismissed: (1) Gorsuch Cooper was a permitted assignee of Gorsuch, Ltd. and therefore not subject to the NTPB provision, and (2) the totality of the circumstances shows the Gorsuch Entities were intended third-party beneficiaries of the Credit Agreement. Neither argument is convincing.

## 1. **Purported Assignment to Gorsuch Cooper**

According to the NTPB provision, the Credit Agreement "is made and entered into for the sole protection and benefit of the parties hereto and their respective permitted successors and assigns," and all others are precluded from bringing claims. App. at 76. Gorsuch Cooper argues it is a permitted assignee and can therefore bring suit under the Credit Agreement.

For evidence of the assignment, Gorsuch Cooper points to a January 6, 2004 agreement in which Gorsuch, Ltd. assigned Gorsuch Cooper its rights and obligations in a contract to purchase property. On January 7, 2004, Wells Fargo extended Gorsuch, Ltd. a $5.5 million loan ("Term Loan"). Gorsuch, Ltd. signed a promissory note ("Term Note") for the same amount. Gorsuch, Ltd. transferred the proceeds of the loan to Gorsuch Cooper, which then purchased the property. Gorsuch Cooper contends Wells Fargo was "fully aware" that Gorsuch, Ltd. had assigned its rights to purchase the

-9-

property, knew the Term Loan would be used for that acquisition, "and intended and consented to this use." *Id.* at 20. Because the Term Note was incorporated into the Credit Agreement by reference,[8] Gorsuch Cooper argues the assignment from Gorsuch, Ltd. to Gorsuch Cooper was a permitted assignment under the Credit Agreement.

Accepting the facts alleged, Gorsuch Cooper fails to make a plausible claim for relief. First, Gorsuch Cooper's claim is barred by express non-assignment clauses in both the Term Loan and the Credit Agreement. The Term Loan states: "Borrower may not assign or transfer its interest hereunder without Bank's prior written consent." *Id.* at 108. The Credit Agreement similarly states: "Borrower may not assign or transfer its interests or rights hereunder without Bank's prior written consent." *Id.* at 75. Colorado law recognizes the validity of non-assignment clauses. *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1052 (Colo. 1994) (en banc). Gorsuch Cooper contends Wells Fargo tacitly approved of the assignment, but they never demonstrate—or even allege—Wells Fargo gave written permission for the January 6, 2004 assignment to Gorsuch Cooper or to any future assignments. The express terms of the Term Loan and Credit Agreement therefore preclude recovery by Gorsuch Cooper.

---

[8] Section 1.2(a) of the Credit Agreement provides: "Borrower's obligation to repay the [Term Loan] shall be evidenced by a promissory note dated as of January 7, 2004 ('[Term Note]'), all terms of which are incorporated herein by this reference." App. at 64.

Even without a non-assignment clause, Colorado's Credit Agreement Statute of Frauds prohibits implied assignments: "A credit agreement may not be implied under any circumstances, including, without limitation, from the relationship, fiduciary or otherwise, of the creditor and the debtor or from performance or partial performance by or on behalf of the creditor or debtor, or by promissory estoppel." Colo. Rev. Stat. Ann. § 38-10-124(3). Absent written documentation, Gorsuch Cooper cannot allege Wells Fargo tacitly accepted legal obligations to Gorsuch Cooper under the Term Loan or Credit Agreement.

Finally, the documents the Gorsuch Entities attach to their complaint pertain to collateral agreements and fail to demonstrate Wells Fargo was party to any assignment of rights or obligations.[9] The written assignment from Gorsuch, Ltd. to Gorsuch Cooper assigns Gorsuch, Ltd.'s rights and obligations under a contract to buy and sell real estate with the Continental Divide Company. It does not reference Wells Fargo or the proceeds from the Term Loan. The Term Loan and Term Note are between Wells Fargo and Gorsuch, Ltd. Gorsuch Cooper delivered a Deed of Trust to Wells Fargo as security for

---

[9] The Gorsuch Businesses attached the Credit Agreement, Assignment, Term Note, Term Loan, Loan Agreements, and Deed of Trust to their complaint as exhibits. We therefore consider these documents part of their complaint in our Rule 12(b)(6) analysis. Fed. R. Civ. P. 10(c); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

-11-

the Term Note, but did so as a guarantor, not a permitted assignee.[10]  The materials

demonstrate Wells Fargo loaned money to Gorsuch, Ltd. and Gorsuch, Ltd. loaned

money to Gorsuch Cooper.  They do not show Wells Fargo was a party or consented in

writing to any assignment of rights or obligations.

The factual allegations made by the Gorsuch Entities, even if accepted as true, fail

to demonstrate Gorsuch Cooper was a permitted assignee under the Credit Agreement.

As a result, Gorsuch Cooper remains subject to the NTPB provision.

2.  **Gorsuch Entities' Claim to be Third-Party Beneficiaries**

The Gorsuch Entities contend the district court erred when it dismissed their claim

to be third-party beneficiaries.  They argue the court gave undue weight to the NTPB

provision.  They further argue that other aspects of the Credit Agreement and the

circumstances surrounding its formation demonstrate the Gorsuch Entities were intended

third-party beneficiaries.  We again do not find the Gorsuch Entities' arguments

persuasive.  First, under Colorado law, NTPB provisions offer strong proof of the parties'

---

[10] Even in Gorsuch Cooper and Aspen's own proposed third amended complaint, they describe the transfer of the proceeds from Gorsuch, Ltd. to Gorsuch Cooper as a separate transaction: "Gorsuch, Ltd. and Gorsuch Cooper entered into a separate loan transaction, whereby Gorsuch, Ltd. lent the $5,500,000.00 it had borrowed from Wells Fargo, to Gorsuch Cooper for the acquisition of the Gorsuch Cooper Property."  App. at 964.

intent.  Second, the NTPB provision in the Credit Agreement is clear and unambiguous.

Third, Wells Fargo did not waive the NTPB provision through its conduct.

    a.  *NTPB provisions as proof of intent*

Under Colorado law, the parties to a contract must intend to create third-party

beneficiaries, and the best evidence of their intent is the contract itself:

> The key question is the intent of the parties to the actual contract to confer a
> benefit on a third party.  That intent must appear from the contract itself or
> be shown by necessary implication.  It is a question of fact to be determined
> by the terms of the contract taken as a whole, construed in the light of the
> circumstances under which it was made and the apparent purpose the
> parties were trying to accomplish.

*Concrete Contractors, Inc. v. E.B. Roberts Const. Co.*, 664 P.2d 722, 725 (Colo. App.

1982).  If written documents are ambiguous, courts may consider extrinsic evidence to

determine the parties' intent.  *Chambliss/Jenkins Assocs. v. Forster*, 650 P.2d 1315, 1318

(Colo. App. 1982).  If an agreement is contained in multiple documents, courts construe

those documents together.  *Id.*  Nevertheless, "[t]he intent of the parties to a contract is to

be determined primarily from the language of the instrument itself."  *Ad Two, Inc. v. City

& Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000) (en banc).

Courts construing Colorado law have determined an NTPB provision offers strong

proof of the parties' intent to preclude recognition of third-party beneficiaries.  In *The

Arc of The Pikes Peak Region v. Nat'l Mentor Holdings*, No. 10-cv-01144, 2011 WL

1047081, at *5 (D. Colo. Mar. 18, 2011), the court considered NTPB provisions in two

-13-

contracts, determined "the contracting parties' intent is expressed clearly in the contracts," and concluded the alleged third-party beneficiaries did not state a claim on which relief could be granted. A party may allege it was intended to benefit from a contract, but such allegations do not overcome contradictory statements in the text of a contract attached to their complaint. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004) ("[W]hen a document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint.").

b. *NTPB provision in the Credit Agreement*

The Gorsuch Entities have not demonstrated they were intended beneficiaries of the Credit Agreement. Under the intent-focused inquiry prescribed by Colorado law, the express NTPB provision offers the clearest indication of the agreement between Gorsuch, Ltd. and Wells Fargo. Furthermore, the documents the Gorsuch Entities attached to their complaint identify Gorsuch, Ltd. and Wells Fargo as the sole contracting parties. Wells Fargo recognized the Gorsuch Entities as affiliates of Gorsuch, Ltd. and guarantors for security purposes, but never as borrowers with rights against Wells Fargo. Simply because a contract contemplates or references another party does not undermine an NTPB provision. *Maisel v. Erickson Constr., Inc.*, No. 11-cv-00555, 2012 WL 3155834, at \*4 (D. Colo. Aug. 3, 2012).

The Gorsuch Entities cite *Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp*, 82 A.D.3d 421 (N.Y. App. Div. 2011), for the proposition that

NTPB provisions are not dispositive, but the decision is readily distinguishable. In *Diamond Castle*, the boilerplate NTPB provision appeared alongside another provision giving the buyer's affiliates enforceable rights, and the term "parties" was used throughout the agreement to include the buyer's affiliates. *Id.* at 421-22. In the instant case, no such ambiguity exists. The Credit Agreement did not give the Gorsuch Entities enforceable rights against Wells Fargo, and the terms "Borrower" and "Affiliates" are used independently.[11]

The Gorsuch Entities refer to corporate resolutions delivered to Wells Fargo that identify the Gorsuch Entities as providers of "third party collateral," but also acknowledge they "will benefit by any credit now or hereafter extended by Wells Fargo Bank, National Association ('Bank') to Gorsuch, Ltd. ('Borrower')."[12] App. at 306, 317. The language indicates Wells Fargo was aware the Gorsuch Entities would benefit from the line of credit, but does not contradict the terms of the Credit Agreement, which indicates the proceeds from the line of credit "shall be used to finance Borrower's

---

[11] The term "parties" in the NTPB provision refers to Wells Fargo and Gorsuch, Ltd., who are listed as the Bank and the Borrower in the Credit Agreement. App. at 63, 78.

[12] The resolution for Gorsuch, Limited at Keystone Mountain and certificate for Gorsuch Cooper contain this phrase but omit the word "any." App. at 87, 328. The various guaranty agreements between Wells Fargo and the Gorsuch Entities were referenced in the complaint and the Credit Agreement, App. at 37, 69, and the certificate for Gorsuch Cooper was attached to the complaint, App. at 87.

working capital requirements" and bars third parties from staking claims to it. *Id.* at 63. In light of the Credit Agreement's clear distinction between Gorsuch, Ltd. as the borrower and the Gorsuch Entities as guarantors or third-party obligors, language acknowledging the Gorsuch Entities would benefit from credit does not make them intended beneficiaries. The district court did not err in deciding the explicit text of the NTPB provision barred the Gorsuch Entities' claims, even in light of these collateral documents.

     c. *Waiver of the NTPB provision*

The Gorsuch Entities finally argue for the first time on appeal that Wells Fargo waived the NTPB provision through its conduct. Because this argument was forfeited below, we review it for plain error. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011). "To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

The Gorsuch Entities fail to demonstrate error because Wells Fargo did not waive the NTPB provision. The district court considered the circumstances surrounding the Credit Agreement but concluded Colorado law limits circumstantial inferences in the face of a clear and plainly understood provision. The Credit Agreement includes not only an NTPB provision but also provisions disclaiming implied waivers and requiring modifications to be in writing and signed. The provisions closely track the Colorado

-16-

Credit Agreement Statute of Frauds, which prohibits implied credit agreements, Colo. Rev. Stat. Ann. § 38-10-124(3), and broadly defines "credit agreement" to include "[a]ny amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions" of a credit agreement, Colo. Rev. Stat. Ann. § 38-10-124(1)(a)(2). Colorado courts have held "the plain language of the statute . . . expressly precludes exceptions by implication or construction." *Hewitt v. Pitkin Cnty. Bank & Trust Co.*, 931 P.2d 456, 458 (Colo. App. 1995) (quotations omitted). Our conclusion that Wells Fargo did not waive the NTPB provision is supported by the district court's findings, the text of the Credit Agreement, and Colorado law. The district court did not err, much less plainly err.

B. *Motion to Amend the Complaint*

Gorsuch Cooper and Aspen moved to amend the complaint on July 10, 2013, nearly two years after the July 12, 2011 deadline in the scheduling order. They sought to add two new tort claims.

We agree with the district court that Gorsuch Cooper and Aspen were no longer parties after the November 17, 2011 order dismissing them from the litigation. After a party has been dismissed, the district court has discretion to decide whether they may amend their complaint. *See Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994).

After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and

-17-

(2) satisfaction of the Rule 15(a) standard. *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001). We review a court's refusal to modify a scheduling order for abuse of discretion. *Burks v. Oklahoma Publ'g. Co.*, 81 F.3d 975, 978-79 (10th Cir. 1996).

Rule 16 of the Federal Rules of Civil Procedure requires a good cause showing. It provides a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In practice, this standard requires the movant to show the "scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Pumpco*, 204 F.R.D. at 668 (quotations omitted). Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed. *Id.* at 668-69. If the plaintiff knew of the underlying conduct but simply failed to raise tort claims, however, the claims are barred. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006); *Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987).

Although district courts in the Tenth Circuit have imposed a good cause requirement when parties seek to amend their pleadings after a scheduling order deadline, *see, e.g.*, *Woods v. Nationbuilders Ins. Servs., Inc.*, No. 11-cv-02151, 2014 WL 1213381, at *3 (D. Colo. Mar. 24, 2014), we have not yet expressly ratified that standard, *Minter*, 451 F.3d at 1205 n.4. In *Minter*, we noted the Second, Fifth, Sixth, Eighth, and Ninth Circuits have all imposed a good cause requirement for amendments to pleadings after

-18-

scheduling order deadlines. *Id*. We have adopted a good cause requirement for parties seeking to add counterclaims, *see SIL-FIO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518-19 (10th Cir. 1990), but have not yet done so for parties seeking to amend their complaints, *Minter*, 451 F.3d at 1205 n.4. We now hold that parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so.

If Gorsuch Cooper and Aspen failed to satisfy either factor—(1) good cause or (2) Rule 15(a)—the district court did not abuse its discretion in denying their motion for leave to amend.

1. **Good Cause Under Rule 16**

Gorsuch Cooper and Aspen contend that because Rule 16 is a procedural rule, the district court abused its discretion by using it to deny substantive rights. They also argue they had good cause to amend their pleadings after the deadline because Colorado's economic loss rule foreclosed their tort claims until after the district court dismissed their third-party claims on November 17, 2011.

The first argument suggests the district court somehow misused Rule 16 to reject the tort claims on the merits. The record reflects otherwise. It shows the district court here did what federal courts have done in other cases—used Rule 16's good cause requirement as the threshold inquiry to consider whether amendments should be allowed after a scheduling order deadline has passed. *See id.*; *Pumpco*, 204 F.R.D. at 668. The

-19-

district court did not err in dismissing the motion to amend if Gorsuch Cooper and Aspen were unable to show good cause for their delay.

Gorsuch Cooper and Aspen are also incorrect about the economic loss rule, which bars plaintiffs from bringing tort claims for economic losses resulting from the breach of a contractual duty. Colorado recognizes the rule, *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256 (Colo. 2000) (en banc), and looks to the source of the duty to determine whether it applies, *id.* at 1262 ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of duty *arising independently* of any contract duties between the parties, however, may support a tort action." (quotations omitted)).

In Colorado, in addition to the parties to a contract, the economic loss rule extends to alleged third-party beneficiaries: "The scope of this rule includes third-party contract beneficiaries who may have a cause of action for breach of contractual duties. . . . We hold that the economic loss rule applies here to prohibit their duplicate claims under tort and contract theories." *Id.* at 1264 n.12; *see also BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004) (noting the rule applies any time "the claimant seeks to remedy only an economic loss that arises from interrelated contracts").

Not all tort claims pled in a case involving contracts violate the economic loss rule. A duty independent of contractual provisions may arise in the context of a special relationship, for example, and some tort claims seeking to remedy economic loss can

-20-

arise independently of a breach of contract claim. *See Town of Alma*, 10 P.3d at 1263 (citing *Brody v. Bock*, 897 P.2d 769, 776 (Colo. 1995) (en banc) (determining a common law fraud claim was based on a violation of a duty independent of a contract); *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 73 (Colo. 1991) (en banc) (determining a negligent misrepresentation claim was based on a violation of a duty independent of a contract)). When claims arise from a non-contractual duty, the economic loss rule does not apply.

In the proposed third amended complaint, Gorsuch Cooper and Aspen allege "the wrongful acceleration of the Term Loan interfered with a written lease agreement between Gorsuch Aspen and Gorsuch Cooper and caused substantial damage to both entities." App. at 1018. The economic loss rule is inapplicable to both claims arising from this conduct. The lease at issue was between Gorsuch Cooper and Gorsuch, Limited at Aspen. Wells Fargo did not have a contractual duty to either of them to avoid interfering in their agreement. The duty allegedly breached by Wells Fargo was independent of the Credit Agreement—indeed, any contract. *See, e.g.*, *Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1108 (Colo. App. 2004) (recognizing "an independent, well-recognized obligation imposed by tort law to refrain from intentional interference with a prospective business advantage").

Because Wells Fargo's actions were not subject to the lease agreement, the economic loss rule did not apply. *JDB Med., Inc. v. The Sorin Grp., S.p.A.*, No. 07-cv-

-21-

00350, 2008 WL 10580039, at \*5 (D. Colo. June 11, 2008) (noting if the defendant was not acting as an agent or operative of the parties to the contract, it may not be subject to the contract's terms for purposes of the economic loss rule). The type of damages sought may be similar to those requested in a contract suit, but Wells Fargo's duty was not the product of contracts bargained for by Wells Fargo and Gorsuch Cooper and Aspen. The economic loss rule therefore did not bar Gorsuch Cooper and Aspen's claims before their third-party beneficiary claims were dismissed.

The only excuse Gorsuch Cooper and Aspen offer for their failure to amend the complaint by the July 12, 2011 deadline is the economic loss rule. Because the rule did not apply to their tort claims, we conclude they had ample time to comply with the deadline established in the scheduling order. And even if the rule had applied, Gorsuch Cooper and Aspen had no good cause for the lengthy delay between November 17, 2011, and the motion for leave to file a third amended complaint on July 10, 2013. Because Gorsuch Cooper and Aspen lacked good cause for the delay in amending their complaint, it was within the district court's discretion to deny their motion pursuant to Rule 16(b)(4).

2. **Rule 15(a)**

Having concluded Gorsuch Cooper and Aspen lacked good cause to amend their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so.

## III. **CONCLUSION**

For the foregoing reasons, we affirm the district court's dismissal of the Gorsuch Entities and denial of Gorsuch Cooper and Aspen's motion to amend their complaint.