FILED
United States Court of Appeals
Tenth Circuit

July 29, 2025

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CHRISTIANS IN THE
WORKPLACE NETWORKING
GROUP,

     Plaintiff - Appellant,

v.

NATIONAL TECHNOLOGY AND
ENGINEERING SOLUTIONS OF
SANDIA, LLC; ESTHER
HERNANDEZ; AARON JIM;
BIANCA HILL,

     Defendants - Appellees.

No. 24-2072
(D.C. No. 1:22-CV-00267-DHU-DLM)
(D. N.M.)

_____

**ORDER AND JUDGMENT\***
_____

Before **HOLMES**, Chief Judge, and **ROSSMAN**, Circuit Judge.\*\*
_____

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

\*\* The Honorable Carolyn B. McHugh, Circuit Judge, originally assigned to this panel, recused herself after oral argument. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. *See United States* v. *Holcomb*, 853 F.3d 1098, 1099 n.\*\* (10th Cir. 2017) (first citing 28 U.S.C. § 46(d); and then citing *United States* v. *Wiles*, 106 F.3d 1516, 1516 n.\* (10th Cir. 1997)).

Christians in the Workplace Networking Group (CWNG) is a resource group of employees at the National Technology and Engineering Solutions of Sandia, LLC (Sandia). In November 2020, Sandia "withdrew its sponsorship of CWNG" because CWNG violated Sandia's "Non-discrimination and Anti-Harassment Policy." RII.300, 298. CWNG responded by suing Sandia in the United States District Court for the District of New Mexico. CWNG alleged Sandia violated Title VII by failing to accommodate the group's religious beliefs, violated CWNG's constitutional rights by withdrawing sponsorship of the group, and engaged in civil conspiracy.

As relevant to this appeal, the district court denied CWNG's motion to amend its complaint after the scheduled deadline to amend pleadings. The district court also granted summary judgment to Sandia on all of CWNG's claims. CWNG appeals these rulings. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

# I

## A[1]

Sandia manages and operates a national security laboratory on behalf of the United States Department of Energy. The company recognizes certain

---

[1] We take these facts from the appellate record, including the statements of undisputed facts in the parties' summary judgment briefing. We note CWNG "failed to refer to any specific portions of the record" in responding to some of Sandia's proposed facts, and the district court permissibly deemed those facts

"employee-sponsored resource groups" (ERGs). These ERGs can be "based on social identity, shared characteristics, or life experiences." RI.212. Sandia states the purpose of "ERGs is to promote a welcoming, diverse, respectful, and inclusive environment." RI.212. But "[p]articipation in ERGs is not an employment requirement." RI.213.

CWNG was originally "an employer-sponsored ERG." RIV.807. ERGs "officially sponsored by Sandia" have access to "operational funds" for approved expenses, such as costs associated with "[a]pproved speakers," "[v]ideo conferencing," and "promotional items for recruitment purposes." RI.181–82. The record also suggests sponsorship created benefits such as "participation in ERG Chair sessions, budget and fee money, support for diversity cinemas, [and] lunch & learns." RII.257. CWNG did "not require its members to be Christian." RI.213. But CWNG limited "leadership positions" to "Christian employees who attest to the detailed belief system articulated in CWNG's Statement of Faith." RI.213. "CWNG also require[d] its leaders to refrain from

---

to be undisputed. RIV.822 n.1; *see* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *Cross* v. *The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) ("[I]t is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record." (alteration in original) (quoting *Downes* v. *Beach*, 587 F.2d 469, 472 (10th Cir. 1978))).

3

engaging in 'moral or ethical behavior which contradicts clearly defined issues outlined in scripture.'" RI.213.

In August 2018, Sandia adopted a "Non-discrimination and Anti-Harassment Policy," titled HR008. RII.298. HR008 "prohibits . . . any form of discrimination, harassment, or retaliation based upon" certain traits, including "religion." RI.214. In 2019, following the adoption of HR008, Sandia "requested all ERGs provide their Strategic Plans, Charters, and other formation documents for review, including CWNG[]." RII.299.

CWNG's policies about leadership positions were described in its "2019 Strategic Plan." RI.214. After reviewing that plan, "Sandia determined [the policies] that restricted leadership to only those willing to attest to a Christian statement of faith and adhere to Christian Biblical standards of conduct were discriminatory because they excluded employees based upon their religious beliefs." RI.214. Sandia "requested that CWNG revise the Strategic Plan to comply with HR008." RI.214.

CWNG responded by requesting "a religious accommodation, allowing it to leave . . . the language" in its Strategic Plan "due to a sincerely held religious belief." RII.299. Sandia continued to request "CWNG provide alternative language for the provisions that were not in compliance with HR008." RII.299. After failing to reach a mutual resolution with CWNG, "Sandia withdrew its sponsorship of CWNG." RII.300. It appears "[w]ithdrawal of sponsorship

4

mean[t] withdrawal of the assistances afforded to CWNG as a sponsored Networking Group such as participation in ERG Chair sessions, budget and fee money, support for diversity cinemas, lunch & learns, etc." RII.257. After losing sponsorship, CWNG continued to meet as a voluntary organization of Sandia employees.

## B

### 1

On April 8, 2022, CWNG sued Sandia and three of its officers—Esther Hernandez, Aaron Jim, and Bianca Hill—in the United States District Court for the District of New Mexico. We refer to the defendants collectively as "Sandia" unless noted otherwise.[2]

In the complaint, CWNG alleged it was "an unincorporated association of Christian engineers and scientists and other employees." RI.24. The complaint brought seven claims. In the first claim, under Title VII of the Civil Rights Act of 1964, CWNG alleged Sandia "failed to reasonably accommodate the religious beliefs of [CWNG] as is required under 42 U.S.C. Section 2000e-2." RI.37. In the second through sixth claims, under 42 U.S.C. § 1983, CWNG alleged Sandia violated the First and Fourteenth Amendments when it withdrew its sponsorship of the group. CWNG articulated theories regarding

---

[2] CWNG also filed an amended complaint on May 31, 2022, and we refer to this operative pleading as the "complaint."

5

"freedom of speech" (claim two), "viewpoint discrimination" (claim three), "free exercise" (claim four), "freedom of association" (claim five), and "equal protection" (claim six). RI.37–38 (heading capitalization omitted). In the seventh claim, CWNG alleged Sandia "conspired with the Department of Energy to violate the constitutional rights of [CWNG]." RI.38. The complaint sought declaratory relief, a permanent injunction, and damages.

### 2

Discovery ensued. As relevant here, the district court entered a scheduling order under Federal Rule of Civil Procedure 16. RI.72–74. It adopted a deadline of December 30, 2022, "for Plaintiff to amend pleadings . . . pursuant to Federal Rule of Civil Procedure 15." RI.73. The expert disclosure deadline was February 28, 2023. RI.73. That day, Sandia filed an expert witness disclosure under Federal Rule of Civil Procedure 26(a)(2)(B), identifying Dr. Luke Gorton as an expert.[3] In the report attached to the

---

[3] The expert disclosure was not included in the appellate record, but it is available on the district court's docket. *See* Def.'s Expert Witness Disclosure, *Christians in the Workplace Networking Grp.* v. *Nat'l Tech. & Eng'g Sols. of Sandia LLC*, No. 1:22-CV-00267-DHU-DLM, 2024 WL 1334056 (D.N.M. Mar. 28, 2024) (Dkt. No. 67) (hereinafter Expert Disclosure). We may take judicial notice of the expert disclosure. *See Su* v. *Ascent Constr., Inc.*, 104 F.4th 1240, 1243 n.1 (10th Cir. 2024) ("We take judicial notice of district-court filings below that were not included in the record on appeal."); Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

disclosure, Dr. Gorton said he was asked to opine on, "1. Whether a specific 'statement of faith' could be universally accepted amongst all persons who identify as 'Christian;' and 2. Whether specific language governing the need to conform one's behavior to scripture would be uniformly interpreted by all persons who identify as 'Christian.'"[4] RI.129. In his opinion, "the label 'Christian' does not have an entirely agreed-upon definition"; "[i]t would be difficult to craft a statement [of faith] that would be equally applicable to all Christian groups"; and "[t]he mandate that someone may not engage in 'moral or ethical behavior which contradicts clearly defined issues outlined in scripture' may or may not be universally applicable across different Christian groups." RI.129.

On March 13, 2023—after the deadline for amending pleadings—CWNG moved for leave to file a second amended complaint. The motion explained "the only [proposed] changes are to add claims under the Religious Freedom Restoration Act [(RFRA)], 42 [U.S.C.] §2000bb and a claim, distinct from the failure to accommodate religious beliefs already pled, for religious discrimination under Title VII, 42 U.S.C. §2000cc." RI.86. CWNG maintained "the conduct here is the same as stated in the [first] Amended Complaint."

---

[4] Dr. Gorton's *curriculum vitae* was attached to the expert disclosure and identified him as "Senior Lecturer in Classics and Religious Studies" at the University of New Mexico. Expert Disclosure, Exhibit B, at 1.

RI.87. And CWNG stated the new claims would "require much of the same evidence as the existing claims." RI.87.

Sandia insisted the motion was untimely. Sandia reasoned a party must satisfy both Federal Rule of Civil Procedure 15(a) and Federal Rule of Civil Procedure 16(b) to amend its pleadings after a scheduling order deadline. RI.107 (citing *Hamric* v. *Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1118 (10th Cir. 2021)). Among other arguments, Sandia observed Rule 16(b)(4) imposes a "good cause" standard. RI.107. But CWNG's motion "d[id] not even reference Rule 16(b)," Sandia argued, or "set forth any argument for good cause." RI.108.

In its response, CWNG appears to have acknowledged Rule 16(b) and its good cause requirement. Pointing to Sandia's expert disclosure, CWNG argued that Sandia was "for the first time . . . rais[ing] as a defense the position that one need not subscribe to the beliefs in the statement of faith and agree to a disciplinary clause . . . to be 'Christian.'" RI.121. Amending the complaint to add a RFRA claim, CWNG maintained, was "needed to protect Plaintiff's right to use its definition of 'Christian,' not Defendant's." RI.121.

The district court denied CWNG's motion. Like Sandia, the court observed CWNG could not succeed unless it satisfied Rule 16(b)'s "good cause" standard. The court reasoned CWNG could not satisfy the good cause standard. As it held, "(1) Plaintiff 'knew of the underlying conduct but simply failed to raise [its] claims,' and (2) Plaintiff has failed 'to show the scheduling deadlines

[could not] be met despite [its] diligent efforts.'" RIV.841, 844 (alterations in original) (first quoting *Husky Ventures, Inc.* v. *B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018), and then quoting *Tesone* v. *Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019)). The district court also concluded CWNG could not satisfy the standards in Rule 15(a)—which cover "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies . . . , undue prejudice . . . , [and] futility." RIV.845 (quoting *Hasan* v. *AIG Prop. Cas. Co.*, 935 F.3d at 1101 (10th Cir. 2019)). The court held CWNG's motion evinced undue delay and would have unduly prejudiced Sandia.

### 3

On June 23, 2023, Sandia moved for summary judgment on CWNG's § 1983 claims (claims two through six) and its civil conspiracy claim (claim seven). Sandia raised several arguments concerning the § 1983 claims, including that CWNG "is not a 'person' entitled to sue under § 1983," and "defendants are not government actors" who can be subject to § 1983 claims. RI.218, 216. Regarding civil conspiracy, Sandia argued the claim was "missing all required elements." RI.211. In response, CWNG appeared to suggest Sandia was a "state actor" for constitutional purposes. RII.434.

The district court granted Sandia's motion. As to the § 1983 claims, the court agreed with Sandia that "neither Plaintiff nor Defendants are proper

9

parties."[5] RIV.825. As to the civil conspiracy claim, the court reasoned "Plaintiff's Response failed to even mention its conspiracy claim," so "there are no facts in the summary judgment record to substantiate the existence of an alleged conspiracy." RIV.835.

In a separate motion on June 23, 2023, Sandia moved for summary judgment on CWNG's Title VII failure-to-accommodate claim (claim one). Among other arguments, Sandia insisted CWNG "cannot establish a prima facie case of religious discrimination regarding its reasonable accommodation claim." RII.305. Sandia observed "the first prong in establishing a prima facie case of religious discrimination is . . . that the employee has a bona fide religious belief that conflicts with a job requirement." RI.306 (citing, *inter alia*, *Tabura* v. *Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018)). But, Sandia contended, "the record in this matter is completely void of any evidence, reflecting that there is a conflict between Plaintiff's religious beliefs . . . and Sandia's employment requirements." RII.307. Sandia further observed, to establish the third prong of a *prima facie* case, a plaintiff must show "the

---

[5] In the district court, the parties also disputed whether CWNG's § 1983 claims could be conceptualized as claims under *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and whether the proper-party analysis could change accordingly. The district court concluded CWNG "has not pleaded *Bivens* claims," so it did "not address the merits of a *Bivens* claim." RIV.825. CWNG does not argue on appeal that it has brought any *Bivens* claims, so we assume it has not.

employer took adverse employment action." RII.305 (citing, *inter alia*, *Tabura*, 880 F.3d at 549). Sandia argued "the loss of Sandia sponsorship caused CWNG no significant change in employment status." RII.308.[6] CWNG's response brief

---

[6] We note the law on what a plaintiff must show to establish a *prima facie* case under Title VII has changed since the district court proceedings. "We have previously defined 'adverse employment actions' as those that 'constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Scheer* v. *Sisters of Charity of Leavenworth Health Sys., Inc.*, No. 24-1055, 2025 WL 2026168, at *2 (10th Cir. July 21, 2025) (alteration in original) (quoting *Sanchez* v. *Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)). Sandia and the district court invoked that standard at summary judgment. *See* RII.308 (Sandia asserting "the loss of Sandia sponsorship caused CWNG no significant change in employment status"); RIV.817 (district court concluding "Plaintiff has submitted no evidence . . . a significant change in employment status occurred").

But in *Muldrow* v. *City of St. Louis, Missouri,* the Supreme Court "lower[ed] the bar Title VII plaintiffs must meet." 601 U.S. 346, 356 n.2 (2024); *see id.* at 353 & n.1 (resolving a Circuit split over whether a Title VII plaintiff "must meet a heightened threshold of harm—be it dubbed significant, serious, or something similar" and identifying this circuit's precedent in *Sanchez* as an example of the "significant change" standard). *Muldrow* "change[d] the legal standard used in any circuit that has previously required 'significant,' 'material,' or 'serious' injury." *Id.* at 356 n.2. As we recently acknowledged in *Scheer*, after *Muldrow*, an "employment action is adverse if a plaintiff can demonstrate that she experienced '*some harm* respecting an identifiable term or condition of employment' as a result of that action." *Scheer,* 2025 WL 2026168, at *3 (emphasis in original) (quoting *Muldrow*, 601 U.S. at 359). "This means an employer's action 'must have left [the plaintiff] worse off, but *need not have left her significantly so.*'" *Id.* (alteration and emphasis in original) (quoting *Muldrow*, 601 U.S. at 359). To be sure, the Supreme Court in *Muldrow* noted, given the lower bar, "many cases will come out differently." *Muldrow*, 601 U.S. at 356 n.2. The disposition of this appeal is unaffected by the change in the legal standard because, as we will explain, CWNG failed to preserve *any* argument concerning its *prima facie* case in the district court.

did not clearly address its *prima facie* case.[7] *See* RIII.479.

The district court granted Sandia's motion. It agreed with Sandia that CWNG "cannot establish a prima facie Title VII case." RIV.812. The court observed "Plaintiff made no arguments about its prima facie case." RIV.816. The court further held it "need only address the third element"—adverse employment action—"to resolve Defendants' motion." RIV.816. "Plaintiff has submitted no evidence that Plaintiff's members were fired for failing to comply with an employment requirement," the court ruled, "nor evidence [that] a significant change in employment status occurred." RIV.817. The court determined CWNG had made "allegations" about potential harms, but "provided no clear record citations to support these allegations and it is not the Court's job to search for them." RI.817 (citing *Cross* v. *The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004)).[8]

This timely appeal followed.

---

[7] CWNG may have addressed its *prima facie* case in a section titled "Qualified Immunity"—though Sandia's motion raised no qualified immunity defense. RIII.479. In this section, CWNG stated, without elaboration, "Thomas v. Nat'l Ass'n of Letter Carriers, 225 F.3d 1149, 1155-56 & n.6 (10th Cir. 2000) held a sincere religious belief which conflicted with a job requirement resulting in loss of benefits for not complying makes out a prima facie case." RIII.479.

[8] The district court also concluded Sandia "provided a reasonable accommodation," which provided an additional reason to grant the motion. RIV.817. The court did not address a number of other arguments Sandia had made in its summary judgment motion.

## II

CWNG appeals the district court's orders (1) denying CWNG's motion for leave to file a second amended complaint and (2) granting summary judgment to Sandia on all of CWNG's claims. We consider these challenges and discern no error.[9]

---

[9] As a threshold issue, the district court made a statement about Article III standing that we must address. *See Arbaugh* v. *Y&H Corp.*, 546 U.S. 500, 514 (2006) (explaining federal "courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists"). The court stated CWNG "has associational standing through its members." RIV.814. That is not exactly correct. Associational standing applies when "the plaintiff is an organization suing *on behalf of its members*." *Utah Physicians for a Healthy Env't* v. *Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021) (emphasis added). CWNG's complaint alleges it sued on its own behalf, not on behalf of its members. *E.g.*, RI.36 (alleging "Plaintiff has been denied recruitment opportunities, not been permitted to participate in Employee Group forums, and lost support for its group activities").

To be sure, CWNG does have standing, and Sandia does not argue otherwise. To establish standing, a party must show (1) it has suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). CWNG meets these requirements. First, CWNG lost ERG sponsorship, which "mean[t] withdrawal of . . . participation in ERG Chair sessions, budget and fee money, support for diversity cinemas, lunch & learns, etc." RII.257. Second, Sandia's challenged withdrawal of sponsorship caused these harms. And third, the relief CWNG requested—such as an "injunction prohibiting Defendants from denying . . . sponsorship" to CWNG—would redress CWNG's injuries. RI.39.

**A**

**1**

"We review for abuse of discretion a district court's denial of a motion to amend a complaint after the scheduling order's deadline for amendments has passed." *Hamric*, 6 F.4th at 1117 (quoting *Birch* v. *Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015)). A district court abuses its discretion if its decision is "arbitrary, capricious, whimsical or manifestly unreasonable." *Id.* (quoting *Birch*, 812 F.3d at 1247).

As discussed, a party "seeking leave to amend after a scheduling order deadline must satisfy *both* the . . . standards" in Federal Rule of Civil Procedure 15(a) and Federal Rule of Civil Procedure 16(b). *Id.* (emphasis added) (quoting *Tesone*, 942 F.3d at 989).

Rule 15(a)(2) states "[t]he court should freely give leave [to amend a complaint] when justice so requires." Still, under Rule 15(a), a district court need not grant leave when there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan* v. *Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quoting *Frank* v. *U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

Rule 16(b)(4) provides "[a] schedule may be modified only for good cause and with the judge's consent." This "good cause" standard requires a party to

14

"show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Tesone*, 942 F.3d at 988 (quoting *Gorsuch, Ltd., B.C.* v. *Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)). A movant may satisfy the good cause standard if it "learns new information through discovery or if the underlying law has changed." *Birch*, 812 F.3d at 1247 (quoting *Gorsuch*, 771 F.3d at 1240). "If the plaintiff knew of the underlying conduct but simply failed to raise [its] claims, however, the claims are barred." *Id.* (quoting *Gorsuch*, 771 F.3d at 1240).

**2**

CWNG reprises its argument from the district court. It contends "there was good cause to amend the scheduling order" deadline. Op. Br. at 11. CWNG insists Sandia's expert report "impl[ied] for the first time that . . . there is no substantial burden if Plaintiff is removed as an ERG." Op. Br. at 37. Sandia argues CWNG did not show good cause. It stresses "CWNG knew the facts underlying its proposed [new] claim before the deadline to amend," so there was no reason for its delayed motion. Resp. Br. at 14.

The district court did not abuse its discretion in denying CWNG's motion for leave to amend. As the district court reasoned, when CWNG filed its operative complaint, it "was aware of the underlying facts upon which its proposed amendment [wa]s based." RIV.841. CWNG stated it sought "only" to add two new claims it had overlooked, and the claims would rely on "much of

15

the same evidence" and all of the same "conduct" "as the existing claims." RI.87. Because CWNG "knew of the underlying conduct but simply failed to raise [the additional] claims," it did not show good cause under Rule 16. *Gorsuch*, 771 F.3d at 1241. CWNG has not explained why a different conclusion is warranted given the expert report. The district court therefore did not abuse its discretion in denying CWNG's motion. *See Birch*, 812 F.3d at 1249 (concluding there is "no need to consider whether Appellants satisfied Rule 15" when they did "[]not establish 'good cause' under Rule 16"); *Tesone*, 942 F.3d at 990 ("If [the movant] fail[s] to show good cause under Rule 16(b), there is no need for the Court to move on to the second step of the analysis . . . ." (first two alterations in original) (quoting *Carriker* v. *City & Cnty. of Denver*, No. 12-cv-02365-WJM-KLM, 2013 WL 2147542, at *2 (D. Colo. May 16, 2013) (unpublished))).

## B

### 1

We review the grant "of summary judgment de novo, applying the same standards as the district court." *Bekkem* v. *Wilkie*, 915 F.3d 1258, 1266–67 (10th Cir. 2019). "Summary judgment is only appropriate when, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in their favor, the movant establishes that there is no genuine dispute of material fact and that the movant is entitled to judgment

16

as a matter of law." *Prince* v. *Sheriff of Carter Cnty.*, 28 F.4th 1033, 1043 (10th Cir. 2022); *see* Fed. R. Civ. P. 56(a).

2

We begin with CWNG's § 1983 and civil conspiracy claims (claims two through seven). CWNG is an improper plaintiff for § 1983. We have stated "unincorporated associations are not persons entitled to sue under § 1983." *Becker* v. *Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 868 F.3d 1199, 1206 n.5 (10th Cir. 2017); *Lippoldt* v. *Cole,* 468 F.3d 1204, 1216 (10th Cir. 2006) (explaining Congress did not "inten[d] to include unincorporated associations within the ambit of the term 'person' as set forth in 42 U.S.C. § 1983"). CWNG—which the complaint describes as an "unincorporated association"— cannot sue under § 1983. RI.24. It also appears counsel for CWNG waived the § 1983 claims at oral argument. Specifically, when asked whether its § "1983 claims" lacked a proper defendant and were "invalid" "as a matter of law," counsel answered "yes."[10] Oral Arg. 1:26–2:30; *see United States* v. *Amador-*

---

[10] To be sure, in agreeing Sandia was not a proper defendant, counsel for CWNG did not specify that each individual defendant was also improper. But counsel did clearly agree the § "1983 claims" were "invalid" "as a matter of law," which was sufficient to waive those claims as to all defendants. Oral Arg. at 2:20–2:30. To the extent CWNG only waived the § 1983 claims against the company, CWNG was not a proper plaintiff, as we have discussed, and could not sue *any* of the named defendants under § 1983.

*Bonilla*, 102 F.4th 1110, 1115 (10th Cir. 2024) (disposing of a legal issue because counsel "conceded [it] at oral argument").

We therefore affirm the district court's grant of summary judgment on CWNG's § 1983 claims. Likewise, CWNG raises no arguments about its civil conspiracy claim on appeal, so we affirm the district court's grant of summary judgment on that claim as well. *See Thomas* v. *Int'l Bus. Machs.*, 48 F.3d 478, 482 n.2 (10th Cir. 1995) (stating, in a parenthetical, a "failure to argue an issue in the appellate brief or at oral argument constitutes waiver, even when the appellant lists the issue in the notice of appeal" (citing *Abercrombie* v. *City of Catoosa, Okla.*, 896 F.2d 1228, 1231 (10th Cir. 1990))).

### 3

### a

We now turn to CWNG's Title VII claim (claim one). Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000(e)-2(a)(1). We have interpreted this language to "require[] that 'an employer, short of "undue hardship," make "reasonable accommodations" to the religious needs of its employees.'" *Tabura*, 880 F.3d at 549 (emphasis omitted) (quoting *Trans World Airlines, Inc.* v. *Hardison*, 432 U.S. 63, 66 (1977)).

18

At summary judgment, Title VII religious accommodation claims are governed by a burden-shifting framework. *Id.* The plaintiff carries an initial burden to establish a *prima facie* case. To establish a *prima facie* case, the plaintiff must show "1) the employee has a bona fide religious belief that conflicts with a job requirement, 2) the employee informed the employer of this conflict; and 3) the employer" took adverse employment action against "the employee for failing to comply with the job requirement." *Id.* For the third element, a Title VII plaintiff "need show only some injury respecting her employment terms or conditions." *Muldrow* v. *City of St. Louis, Mo.*, 601 U.S. 346, 359 (2024)); *see id.* at 354–55 (stating "[t]o make out a Title VII" claim, plaintiffs "must show some harm respecting an identifiable term or condition of employment"); *see also Scheer* v. *Sisters of Charity of Leavenworth Health Sys., Inc.*, No. 24-1055, 2025 WL 2026168, at *3 (10th Cir. July 21, 2025) (recognizing that in *Muldrow*, "the Supreme Court unambiguously 'change[d] the legal standard'" in the Tenth Circuit, such that to satisfy the adverse employment action element, "an employer's action 'must have left [the plaintiff] worse off, but *need not have left her significantly so*'") (alterations and emphasis in original) (first quoting *Muldrow*, 601 U.S. at 356 n.2; and then quoting *id.* at 359)). Once a plaintiff makes its showing, the burden shifts to the defendant. The defendant must (1) "rebut an element of Plaintiffs' prima facie claims"; (2) "show that it provided a reasonable accommodation for

19

Plaintiffs' religious practice"; or (3) "show that it could not offer a reasonable accommodation without undue hardship." *Tabura*, 880 F.3d at 550.

**b**

Urging reversal, CWNG contends it established the third element of its *prima facie* case—an adverse employment action. Sandia[11] argues CWNG "made 'no arguments about its prima facie case'" in the district court, and "it is too late for CWNG to make the required showing." Resp. Br. at 28 (quoting the district court's summary judgment order). Finally, Sandia argues, CWNG still failed to establish the first and third elements of a *prima facie* case. Resp. Br. at 28–30.

We agree with Sandia. CWNG has waived any argument that it established a *prima facie* case. Recall, Sandia's motion for summary judgment argued CWNG could not show the first and third elements of a *prima facie* case. But in response, CWNG appeared to offer no argument about its *prima*

---

[11] It is not clear whether the district court's order granting summary judgment on CWNG's Title VII claim concerned both the company and the individual defendants. The order granted the "Defendants' Motion for Summary Judgment," which was brought by both the company and the individual defendants. RIV.821; *see* RII.294. Nevertheless, on the same day, the district court also granted the individual defendants' separate motion to dismiss the Title VII claim, and CWNG does not challenge that order on appeal. *See Becker* v. *Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) ("An issue or argument insufficiently raised in the opening brief is deemed waived."). Accordingly, when discussing the district court's Title VII summary judgment order, we use "Sandia" to refer only to the company, not the individual defendants.

*facie* case. The only reference to a *prima facie* case in CWNG's response came in a single sentence about qualified immunity—which was not at issue—and even there, CWNG did not mention the elements necessary to establish a *prima facie* case. *See* RIII.479. As the district court observed, "Plaintiff made no arguments about its prima facie case," and CWNG does not challenge that conclusion on appeal. RIV.816. CWNG has thus waived the arguments it now makes supporting its *prima facie* case. *See Richison* v. *Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011) ("If [a] theory was intentionally relinquished or abandoned in the district court, we usually deem it waived and refuse to consider it."). We thus affirm the district court's grant of summary judgment against CWNG on its Title VII claim.[12]

---

[12] Given our disposition, we need not consider Sandia's additional arguments CWNG lacked "statutory standing" to bring a claim under Title VII, Sandia "provided a reasonable accommodation" to CWNG, or "CWNG's undue hardship argument is unavailing." Resp. Br. at 24, 32, 37 (heading capitalization omitted); *see Niemi* v. *Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014) (explaining "questions of so-called 'statutory standing' . . . are not jurisdictional," meaning we need not address statutory standing in order to adjudicate the merits of this claim).

### III

We **AFFIRM** the district court's order denying CWNG leave to amend its complaint. We **AFFIRM** the district court's orders granting summary judgment to all Defendants-Appellees on all of CWNG's claims.

Entered for the Court

Veronica S. Rossman
Circuit Judge