**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**November 30, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

SHANNON LUCAS,

      Plaintiff - Appellant,

v.

THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY
FOR LARIMER COUNTY COLORADO,
a governmental entity; LARIMER
COUNTY COMMUNITY
CORRECTIONS BOARD; LARIMER
COUNTY COMMUNITY
CORRECTIONS; Criminal Justice
Services in his individual and official
capacities; TIM HAND, Director Larimer,
County Community Corrections, in his
individual and official capacities; DANA
HERSCH, Assistant Director, Larimer
County Community Corrections, in her
individual and official capacities; MASON
KOPP, Program Team Lead, Larimer
County Corrections, in his individual and
official capacities; GWEN ASH, Program
Case Manager, Larimer County
Community Corrections, in her individual
and official capacities; ERIN
CALDWELL, Program Team Lead,
Larimer County Community Corrections,
in her individual and official capacities;
LAUREN HAND, Staff Member, Larimer
County Community Corrections, in her
individual and official capacities,

      Defendants - Appellees,

and

No. 22-1259
(D.C. No. 1:19-CV-01251-RMR-SKC)
(D. Colo.)

LARIMER COUNTY PROBATION DEPARTMENT and GARY DARLING, Division Director, Criminal Justice Services in his individual and official capacities,

Defendants.

---

### ORDER AND JUDGMENT[*]

---

Before **HARTZ**, **TYMKOVICH**, and **MATHESON**, Circuit Judges.

---

Shannon Lucas appeals the district court's order denying her motion to file a third amended complaint ("TAC") as futile and dismissing her claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

In April 2019, Ms. Lucas, who was serving an eight-year sentence in community corrections resulting from her conviction in Colorado state court for first-degree burglary, filed a complaint alleging claims against numerous individuals and entities under (1) state law for negligence and intentional infliction of emotional distress and (2) various federal statutes, including 42 U.S.C. § 1983.  After

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

conferring with defendants' counsel, Ms. Lucas filed an amended complaint that abandoned several claims and defendants.

On the last day for amending the pleadings under the scheduling order, Ms. Lucas filed a motion for leave to file a second amended complaint, which was granted. The result was a complaint that brought claims under § 1983 for: (1) retaliation in violation of the First Amendment; (2) failure to provide medical care in violation of the Eighth Amendment; and (3) conspiracy to violate the First and Eighth Amendments. Defendants moved to dismiss on the grounds that (1) the First Amendment retaliation claim was barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), and (2) the complaint failed to state plausible claims under either the Eighth Amendment or for conspiracy. The district court agreed and granted the motion to dismiss; however, it also granted Ms. Lucas permission to file a motion for leave to file a TAC.

Ms. Lucas filed a motion seeking leave to file a TAC, alleging the same three claims as the second amended complaint. The district court referred the motion to a magistrate judge. While the motion was under consideration, the case was reassigned to a different district court judge. The magistrate judge issued an order granting Ms. Lucas's motion; defendants filed a timely objection. The district court considered the order as a report and recommendation, sustained the objection, vacated the magistrate judge's order, and denied Ms. Lucas's motion to file the TAC

3

as futile.[1]  In doing so, the district court dismissed the Eighth Amendment and conspiracy claims with prejudice and the First Amendment retaliation claim without prejudice.[2]  Ms. Lucas appeals.

## II.  THE TAC

The following allegations are contained in the TAC.  Prior to the events underlying her claims, Ms. Lucas was prescribed Clonazepam to treat anxiety and post-traumatic stress disorder.  Her doctor warned her about possible serious side effects from discontinuing or improperly tapering her dosage.

In July 2018, Ms. Lucas was convicted of first-degree burglary and sentenced to eight years in Larimer County Community Corrections ("LCCC").  She began serving her sentence on October 9, 2018, when she reported to a residential facility.

Upon admission, Ms. Lucas turned over her medication to staff, who in turn noted the medication type, dosage, and pill count in the computer software system. According to Ms. Lucas, "LCCC staff input two material inaccuracies to [her] medication file:  first, staff recorded her medication to be administered three rather

---

[1] The district court did not address whether plaintiff established good cause under Fed. R. Civ. P. 16(b)(4) to modify the deadline in the scheduling order to file an amended complaint.  *See also Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).  The court explained that because its determination that the proposed amendment was futile was "dispositive," it was "unnecessary . . . to determine whether the good cause standard was met."  J.A., Vol. II at 411.

[2] Because the district court denied the motion to amend as futile, it dismissed Defendants' motion to dismiss as moot.

than four times daily; second, staff recorded the number of pills turned in as 38 rather than 56." J.A., Vol. II at 326.

Several days later, "[o]n or around October 14, 2018, [Ms. Lucas] noticed the unusual dissipation of medication in her pill bottle." *Id.* She reported the missing pills and erroneous dosing instructions to LCCC Case Manager Gwen Ash, who "advised [Ms. Lucas] to start taking fewer Clonazepam tablets so that they would 'last until the next refill.'" *Id.* According to Ms. Lucas, Ms. Ash "was not a licensed medical professional and was in no way qualified to amend prescription medication dosing instructions." *Id.* "As a result, [Ms. Lucas] was denied her medication as prescribed without medical advice or oversight" and "suffered physical and mental side effects from benzodiazepine withdrawal," including "sever[e] panic and anxiety, significant weight loss, changes in vital signs, insomnia, dizziness, stomach pain, confusion, and cognitive disturbances." *Id.* at 327.

A few days later, on October 18, 2018, Ms. Lucas requested an audit of her remaining medication. That audit, according to Ms. Lucas, confirmed that at least six tablets were missing. Because she feared running out of medication, she "was forced to request a prescription refill ahead of schedule." *Id.* at 328. The following day, October 19, Ms. Lucas "requested and received a new prescription" that she picked up at the store and turned over to LCCC staff. *Id.* at 328-29. "[A] total of 90 Clonazepam tablets were counted and entered into LCCC's electronic tracking system." *Id.* at 329.

On October 31, 2018, Ms. Lucas again noticed "an unusually low quantity of pills in her bottle." *Id.* LCCC Team Lead Supervisor Mason Kopp "counted the remaining pills in front of [her] and confirmed that at least 26 tablets were missing." *Id.* This time, however, instead of complaining to staff, Ms. Lucas "reported the missing medication to law enforcement by filing a police report at the Larimer County Sheriff's Department." *Id.* When law enforcement arrived to investigate, Mr. Kopp accused Ms. Lucas of "diverting her own medication to support a 'substance abuse problem.'" *Id.*

Ms. Lucas alleged that "[i]n retaliation for filing a report with [law enforcement]," several LCCC staff members "worked in concert to issue a bogus citation" against her for "'false reporting.'" *Id.* at 330. "On or around November 1, 2018, despite a complete lack of evidence to support the infraction," the LCCC Board "upheld the citation and imposed discipline—loss of privileges, loss of 'good time' credit, and an increase in [her] required stay in the residential facility by 25 days." *Id.* Ms. Lucas appealed; however, "[a]fter a sham process that included review of the merits by [a staff member] who helped perpetrate the imposition of the [bogus] citation, the infraction and related discipline were upheld." *Id.*

On November 6, 2018, Ms. Lucas spoke to her doctor about tapering her use of Clonazepam, and "over time, she tapered down to two tablets daily for a total of 14 tablets a week." *Id*. at 331.

Several months later, on March 4, 2019, Ms. Lucas had her prescription refilled for fourteen tablets. But when she turned in her medication, LCCC staff

6

member Lauren Hand counted just twelve tablets and suggested that the pharmacy made a mistake. Ms. Lucas confirmed that she received fourteen tablets and told Ms. Hand she would be pursuing an investigation. According to Ms. Lucas, the following day, Ms. Hand confronted her in the bathroom and threatened her with disciplinary action if she reported the missing pills. Ms. Lucas was released from the residential facility the following month. *See id.* at 323 ("Plaintiff resided at LCCC from October 9, 2018[,] to April, 2019.").

In the proposed third amended complaint, Ms. Lucas sought damages on the retaliation claim on the grounds that defendants "punished [her] for exercising constitutionally protected speech by working in concert to sustain a bogus disciplinary infraction against her, resulting in a material loss of privileges, good time, and an extension of her confinement in community corrections." *Id*. at 335-36. She also sought damages for the alleged Eighth Amendment violation and conspiracy to violate her constitutional rights.

### III.  STANDARD OF REVIEW

"Although [Federal Rule of Civil Procedure] 15(a)[(2)] provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason . . . ." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001).

Although we generally review a district court's denial of leave to amend a complaint for abuse of discretion, "[w]hen a district court denies amendment based on futility, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022) (internal quotation marks omitted), *cert. denied*, 143 S. Ct. 1748 (2023). "We thus consider de novo whether it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Cohen v. Longshore*, 621 F.3d 1311, 1314-15 (10th Cir. 2010) (internal quotation marks omitted). Because we consider this matter de novo, we may affirm on any legal ground supported by the record, even grounds not reached by the district court. *See, e.g.*, *Wolfgang v. Mid-Am. Motorsports, Inc.*, 111 F.3d 1515, 1524 (10th Cir. 1997) (noting that on de novo review, "we are not constrained by the district court's conclusions, but may affirm the district court on any legal ground supported by the record").

## IV.  DISCUSSION

### A.  *First Amendment Retaliation*

Based on our de novo review, we agree with the district court that Ms. Lucas's First Amendment retaliation claim is barred under *Heck* and *Edwards*, but for a different reason. In *Heck*, the Supreme Court addressed the issue of when a prisoner may assert a § 1983 claim relating to her conviction or sentence. The Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove

8

> that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87 (footnote omitted). "The purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007).

In *Edwards*, the Supreme Court applied *Heck* to prison disciplinary proceedings and held that a prisoner may not bring a § 1983 claim challenging a disciplinary hearing by seeking damages or declaratory relief when her claim would "necessarily imply the invalidity of the punishment imposed" unless she first demonstrates that her disciplinary conviction or sentence was previously invalidated. 520 U.S. at 648.

Here, Ms. Lucas sought damages under § 1983 for the retaliatory "bogus [disciplinary] citation" that resulted in the loss of privileges and good-time credits and that extended her stay in the residential facility by twenty-five days. *See* J.A., Vol. II at 330, 335-36. This claim is barred by *Heck* and *Edwards* because it necessarily implicates the validity of the disciplinary charge and resulting sanctions and Ms. Lucas failed to show that the conviction had been invalidated. *See also Butler*, 482 F.3d at 1279 (holding that the conviction that matters under *Heck* is the conviction "tied to the conduct alleged in the § 1983 action"). Ms. Lucas's claim is

precisely the type that *Heck* mandates should be pursued through a petition for habeas corpus and not a § 1983 complaint.

Nonetheless, Ms. Lucas argues that her § 1983 claim was not barred because she no longer had a federal habeas remedy when she was released from the residential facility. In particular, she relies on *Cohen,* 621 F.3d at 1311, which held that "a petitioner who has no available remedy in habeas [to challenge the conviction and sentence], through no lack of diligence on his part, is not barred by *Heck* from pursuing a § 1983 claim." *Id.* at 1317.[3]

Relying on a trio of unpublished district court cases, the district court concluded that although Ms. Lucas was no longer in custody when she was released from the residential facility in April 2019 and therefore lacked a habeas remedy, her § 1983 retaliation claim was barred under *Heck* because she had a post-conviction remedy under Colorado law to challenge the disciplinary conviction.[4] *See Harper v. Woodward Cnty. Bd. of Cnty. Comm'rs*, No. CIV-11-996, 2016 WL 4487704, at *5 (W.D. Okla. May 17, 2016), *report and recommendation adopted*, 2016 WL 4491540

---

[3] In reaching our holding in *Cohen*, we relied on the plurality opinion in *Spencer v. Kemna*, 523 U.S. 1, 21 (1998), which concluded "that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy."

[4] *See* Colo. Rev. Stat. § 18-1-410(1) ("Notwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make applications for postconviction review.").

(W.D. Okla. Aug. 25, 2016); *McFadden v. City of Midwest City*, No. CIV-12-1419, 2014 WL 798013, at *2-3 (W.D. Okla. Feb. 27, 2014); *Taylor v. City of Bixby*, No. 12-CV-0066, 2012 WL 6115051, at *6 (N.D. Okla. Dec. 10, 2012). As explained in *Harper*, "Such a result is consistent with *Heck's* purpose, affording the state an opportunity to cure any constitutional violations in the first instance." 2016 WL 4487704, at *5; *accord McFadden*, 2014 WL 798013, at *2-3 (noting that the remedy available under the Oklahoma Uniform Post-Conviction Procedure Act "affords the state an opportunity to cure any [claimed constitutional] violations, consistent with *Heck's* purpose").

But we need not resolve the issue because the § 1983 retaliation claim fails for a different reason. Ms. Lucas was still serving her eight-year community corrections sentence when she was released from the residential facility, which means that she was "in custody" for habeas purposes when she filed the initial complaint.

This issue came to light based on a statement by Ms. Lucas in her opening brief that "[t]he requirement that Ms. Lucas spend 25 more days in the residential community corrections facility [as a result of the disciplinary conviction] affected *where* she served her community corrections sentence (in a residential facility or in a non-residential program) but not *how long* the sentence ultimately was (eight years)." Aplt. Opening Br. at 32. Therefore, it appeared that Ms. Lucas was still "in custody" after she was released from the facility and when she filed the complaint on April 30, 2019. *See Maleng v. Cook*, 490 U.S. 488, 491 (1989) ("Our interpretation of the 'in custody' language has not required that a prisoner be physically confined in order

11

to challenge his sentence on habeas corpus."); *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963) (recognizing that a prisoner who had been placed on parole was still "in custody" under his unexpired sentence); *Mays v. Dinwiddie*, 580 F.3d 1136, 1139 (10th Cir. 2009) (explaining the term custody "encompasses not only individuals subject to immediate physical imprisonment, but also those subject to restraints not shared by the public generally that significantly confine and restrain freedom").

Because this point is dispositive, we ordered supplemental briefing from the parties to address: (1) Ms. Lucas's community corrections sentence, including the restrictions, if any, that applied after she was released from the residential facility; (2) how Ms. Lucas was prevented from seeking habeas relief between November 2018, when she was convicted of a disciplinary infraction, and April 2019, when she was released from the residential facility; and (3) whether Ms. Lucas was still in custody for purposes of habeas relief when she was released from the residential facility in April 2019.[5]

---

[5] Ms. Lucas argues that defendants waived any argument about whether she was "in custody" because they failed to raise it in the district court or on appeal. Although we ordinarily decline to reach the merits of waived issues, "even when a party waives an issue, our precedent affords us discretion to raise and decide issues sua sponte, even for the purpose of reversing a lower-court judgment, because waiver binds only the party, not the court," *Margheim v. Buljko*, 855 F.3d 1077, 1088 (10th Cir. 2017) (brackets, ellipses, and internal quotation marks omitted). Appellate review of a waived issue is particularly appropriate when the issue is "a pure matter of law and its proper resolution is certain." *Id.* (internal quotation marks omitted). Because the issue of whether Ms. Lucas was "in custody" for habeas purposes is a legal question and the parties had an opportunity to address the issue in supplemental briefing, we exercise our discretion to consider the issue sua sponte.

In her supplemental brief, Ms. Lucas declined to answer questions one and three.[6] As to the first question, she argued that because the record did not disclose the specific restrictions that applied after she left the residential facility, this court's only recourse was to order a limited remand for the district court to resolve this issue of fact. On question three, Ms. Lucas agreed whether she was in custody for habeas purposes was a legal question. However, she argued that the answer depended on what, if any, restrictions applied after she left the residential facility and, as explained in her response to question one, there was no record evidence on the issue.

But whether a plaintiff is in custody under the federal habeas statutes is a question of law that we review de novo. *Mays*, 580 F.3d at 1138. We can answer that question by considering the statutory scheme that implemented and governed Ms. Lucas's nonresidential program, together with the specifics of the Larimer County Non-Residential Program. Doing so, we agree with defendants that Ms. Lucas was "in custody" for habeas purposes as a matter of law.

Colo. Rev. Stat. § 17-27-103(6) authorizes a community corrections board to establish conditions or guidelines for the conduct and supervision of offenders placed by the court in a community corrections program. Larimer County's community corrections guidelines are found at https:www.larimer.gov/cja/comcor/non-res. We may take judicial notice of the guidelines. *See Van Woudenberg ex rel. Foor v.*

---

[6] On question two, Ms. Lucas agreed that nothing prevented her from filing for habeas relief between November 2018, when she was convicted of the disciplinary infraction, and April 2019, when she was released from the residential facility.

13

*Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of . . . facts which are a matter of public record."), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001); *see also Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 n.2 (10th Cir. 2014) ("[T]he court can take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." (ellipses and internal quotation marks omitted)).

Under Larimer County's program, individuals, like Ms. Lucas, who are placed in the non-residential program are required to maintain stability with their treatment, living arrangements, and employment while progressing through levels of supervision. These levels include scheduled home visits with case managers for clients living in their own residence, individual meetings, medication monitoring, and substance testing for the duration of their sentence. *See* https:www.larimer.gov/cja/comcor/non-res.[7]

Also, a community corrections program in Colorado is defined as a community-based or community-oriented program that provides supervision of an offender *in either a residential or non-residential capacity*. *See* Colo. Rev. Stat.

---

[7] In her supplemental brief, Ms. Lucas relies on *United States v. Schneider*, 594 F.3d 1219, 1227 (10th Cir. 2010), to argue that we cannot affirm on alternative grounds because whether she is "in custody" is not indisputable nor does it appear clearly in the record. We disagree. The alternative ground does not go outside the record because the statutory scheme and county program clearly impose "restraints not shared by the public generally that significantly confine and restrain freedom." *Mays*, 580 F.3d at 1139.

§ 17-27-102(3).  Relatedly, any offender who "fails to return within the time prescribed to any community corrections program . . . or leaves such offender's place of employment . . . shall be deemed to have escaped from custody . . . ." Colo. Rev. Stat. § 17-27-106(1)(a).  Notably, the Colorado Court of Appeals has interpreted this statute to apply to both residential and non-residential community placements.  *See People v. Forester*, 1 P.3d 758, 759 (Colo. App. 2000).

Colorado's statutory scheme, along with Larimer County's non-residential program, demonstrate that an offender like Ms. Lucas, who is sentenced to community corrections and placed in either a residential or non-residential program, is deemed to be in the custody of the community corrections program.[8]

Based on the foregoing, we conclude as a matter of law that Ms. Lucas remained "in custody" when she was released from the residential facility into a nonresidential program and therefore had a habeas remedy.  *See, e.g.*, *Mays*, 580 F.3d at 1138-39.  Further, we affirm the district court's order dismissing Ms. Lucas's First Amendment retaliation claim without prejudice.  *See Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996) (holding that "[w]hen a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice").

---

[8] Colorado's criminal escape statute was recently amended to provide that a person serving a sentence to community corrections was no longer considered in custody or confinement *for the purposes of the escape statute*.  *See* Colo. Rev. Stat. § 18-8-208(11).  However, the amendment was limited to this specific exception to the criminal escape statute and did not alter the statutory scheme provided in Colo. Rev. Stat. § 17-27-101 *et seq*.

**B.** *Eighth Amendment*

For her Eighth Amendment claim, the TAC alleged that LCCC Director Tim Hand, Assistant Director Dana Hersch, Mr. Kopp, Team Lead Supervisor Erin Caldwell, Ms. Ash, and Ms. Hand, were deliberately indifferent to her serious medical needs. "[W]e review the proposed [TAC] complaint de novo to determine whether it states a plausible [Eighth Amendment] claim." *Chilcoat*, 41 F.4th at 1218.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). There are "two types of conduct constituting deliberate indifference" to serious medical needs: (1) when a medical professional fails to properly treat a serious medical condition or (2) when a prison official prevents an inmate from receiving treatment or denies her access to medical personnel capable of evaluating the need for treatment. *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

A deliberate-indifference claim has two components, one objective and one subjective. *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014). The objective prong requires the prisoner to show her medical condition was serious enough to implicate the Eighth Amendment. *See id.* This requirement is satisfied if her condition was diagnosed by a medical professional as requiring treatment or was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1192-93 (internal quotation marks omitted). To satisfy the subjective prong, the prisoner must show the medical professional knew she faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take

16

reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Moreover, to recover damages from each of these defendants under § 1983,

Ms. Lucas had to show that each defendant personally participated in the alleged

constitutional violation. *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d

1185, 1193 (10th Cir. 2007).

There are no allegations in the TAC that Mr. Hand, Ms. Hersch, Ms. Caldwell,

Mr. Kopp, or Ms. Hand knew that Ms. Lucas was impeded in her ability to take her

medication as prescribed.  Instead, Mr. Kopp was alleged to have misrepresented to

law enforcement that Ms. Lucas was diverting her medication to support a substance

abuse problem, and Ms. Hand allegedly stole some pills and threatened disciplinary

action against Ms. Lucas if she reported the missing pills.  There are no allegations

that Ms. Hand knew that Ms. Lucas faced a risk of substantial harm if she missed

some doses or that Ms. Lucas in fact missed any doses as a result of Ms. Hand's

conduct in March 2019.  Likewise, there are no allegations that Mr. Hand,

Ms. Hersch, or Ms. Caldwell knew that Ms. Lucas was not receiving her medication

or that the failure to do so would result in substantial harm.  Rather, these defendants

were alleged to be part of a conspiracy to cover up mismanagement.  Therefore, the

TAC failed to state plausible claims for the denial of medical care or treatment

against these defendants.

Only Ms. Ash was alleged to have been involved in Ms. Lucas not receiving

her prescribed doses when she "refused to change [the] dosing instructions to match

the prescription that the medication be consumed four times daily."  J.A., Vol. II

at 327.  According to Ms. Lucas, "[t]he danger of suddenly discontinuing or improperly tapering Clonazepam is well-documented *in the medical community*." *Id.* at 322 n.1 (emphasis added).  However, there are no allegations that Ms. Ash (or any other defendant) was a member of the medical community who knew or should have known there was a substantial risk of harm to Ms. Lucas if she received only three doses of Clonazepam daily.  Indeed, Ms. Lucas specifically alleged that Ms. Ash "was not a licensed medical professional and was in no way qualified to amend prescription medication dosing instructions." *Id.* at 326.  Thus, when Ms. Ash allegedly refused to change the dosing instructions, she did not act with the knowledge that taking only three doses a day posed a substantial risk of serious harm to Ms. Lucas.  While Ms. Ash's directive may have been ill-advised, "deliberate indifference entails something more than mere negligence." *Farmer*, 511 U.S. at 835.  We agree with the district court that none of the allegations in the TAC "give rise to an inference that any Defendant acted with a state of mind rising to the level of knowing and disregarding an excessive risk to inmate health or safety." J.A., Vol. II at 420 (brackets, ellipsis, and internal quotation marks omitted).

Having failed four times to state a plausible Eighth Amendment claim, the district court properly dismissed the claim with prejudice.

## C.  *Conspiracy*

For a valid § 1983 conspiracy claim, a plaintiff "must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449

(10th Cir. 1990). Because Ms. Lucas failed to plead an actual deprivation of her constitutional rights under either the First or Eighth Amendments, her conspiracy claim also failed.

## V. CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge